Radcliff, J.
The deed or instrument on which this action is brought, is obscurely and inartificially expressed ; but the intent of the parties, and the scope of their contract, *314 I consider to have been, that the defendant should pay for the lands in case the plaintiff appeared to have a good title, and not otherwise. The defendant, or Phelps, who was his „ principal, and whom he must be deemed to represent, did not choose to rely on the covenants or warranty contained in the plaintiff’s deed, and for that reason, stipulated to pay the consideration money only in case the title should be clearly ascertained to be valid. By the laws of Vermont, it appears that no title can be valid or secure, unless the deeds which are the evidence of such title, be regularly recorded in the town where the lands lie. Aware of this, the parties regulated their contract accordingly, and referred to the records of the several towns,: and to certificates to be there obtained, as the evidence by which its validity should be ascertained.. When so ascertained, the defendant agreed to pay the plaintiff for the land.
[*263] Tt appeared in evidence, that there were no mesne , conveyances from the original proprietors of the lands in question on record, and of course, there did not exist that evidence of title which the parties contemplated, and the laws of Vermont required. There is proof that the defendant told Phelps that he had examined, and believed the title to be good, except as to about 4000 acres ; but this information was not true in fact, and being founded in mistake, I think that it ought not to conclude him. It is also true, that the defendant- delivered the deed to Phelps, which, by the agreement with the plaintiff he was bound to return to him. This act was unauthorized, and strictly in violation of his contract with the plaintiff, but I do not think that it ought to subject him to the rigorous consequence of paying the whole value of the lands. The plaintiff still can be no further damnified than it appears he had title to those lands : to that extent he ought to recover and no more. As between the plaintiff and the defendant the possession of the deed by the former could be of no use if he had no title, and if he had a title, it could be of no other use than to enable him to retain it until his money was paid. The delivery to Phelps might deprive him of that security, and also render him li *315 able, in case of a defect of title, on the covenants and warranty contained in it. But in whatever manner he may be affected in the event by these covenants and the warranty, he has not shown that he has in fact sustained any damages, and it would be too uncertain to allow him to prevail in this action, on the expectation merely of a future recovery by Phelps. No rule of actual damages can be given, in the present situation of things, nor Until recovery be had; and I therefore think, that the claim of the -plaintiff and the responsibility of the defendant must still, under the existing circumstances, be substantially founded on the sufficiency of the plaintiff’s • title. No actual damages being shown, the plaintiff could be entitled to recover a nominal sum . oilly, and although this may be. strictly his *right, I - [*264] do not think that we ought to direct a new trial for the sake of nominal damages merely.
On the trial, the plaintiff offered to prove that the defendant declared that he had caused the lands to be sold for taxes, and bought them himself to secure the title, but not to defeat the plaintiff’s right, which evidence was overruled. It has been insisted that this- evidence ought to have been admitted, and that the plaintiff was entitled to recover the value of the lands so purchased, after deducting the moneys paid by the defendant. Allowing the purchase to have been made in affirmance of the'plaintiff’s title, the defendant may be considered as his trustee, but I think he can have no remedy against him at law, on the foundation of this contract. The purchase must be considered as a separate transaction, and dehors the contract. The contract was for a perfect and existing, not an imperfect or future title. A title subsequently acquired, cannot be within it, and, therefore, cannot be a basis for the present action, and if the plaintiff be entitled to a remedy on this ground, he must seek it in another mode.'
I am, therefore, of opinion, that this evidence was properly refused, and that we ought not to award a new trial, for the purpose of nominal damages merely.
Kent, J. and Benson, J. were of the same opinion.'
*316 Lansing, Ch. J.
A motion has been made to set aside the nonsuit granted in this cause.
To determine on it, the terms of the contract, and the transactions in consequence of it, must be particularly considered.
The contract states in substance,
1. That the defendant had received a deed executed by the plaintiff and his wife to Oliver Phelps, for 26,814 acres of land in the state of Vermont.
2. The defendant agreed that he would have it recorded, and return it to the plaintiff with the proper certificates, necessary to show that the title to the land was legally [*365] vested in the plaintiff, and that it was clear of Encumbrances, if on examination it should be found to be so.
3. That when such title was fully and satisfactorily ascertained, the said lands, or so much of them as the plaintiff should appear to have a good title to, should be paid for at the rate of three shillings per acre, by discharging certain demands which existed against the plaintiff, including 1513Z. 3s. 9d. which the plaintiff had' already received and acknowledged, on a contract for the same lands.
4. That the defendant was to be allowed five per cent, for transacting the business,
This contract obviously formed only a part of the engagements subsisting between the parties named in it. The other part is not brought into view, but sufficient appears to enable us to infer, that the' plaintiff and Phelps were the principals in it, and that the defendant was merely introduced as agent for one or both of the parties; and this receives some corroboration, from the circumstance of his being entitled to receive a commission for the service in which he was to be employed'. ■
The deed was executed by the plaintiff to Phelps, and I think this affords strong ground to infer, that he was the person who made the. payment of part of the consideration money, though the vague and indefinite terms in which the payment is mentioned, does not positively ascertain it.
It is however certain, that the plaintiff conveyed the land *317 in question to Phelps, and that he received a sum of money on account; and I can discover no circumstances in the case which will establish the fact,- or even the presumption- that the defendant made this advance. If no such fact exists, the defendant was merely entrusted with the deed to have it recorded, and to ascertain whether the title was clear and exempt from incumbrances. These objects being attained, he was to return it to the plaintiff] with certain certificates of public officers, evidencing those facts, and *then - [*266] the plaintiff was to receive at the rate of three shillings per acre, in the mode stipulated, for the land for which a good title appeared.
The défendant examined the records, had the deed recorded, and possessed himself of the certificate; he expressed some doubt as to the title to 4000 acres, but supposed the title of the residue to be good, and thereupon receivéd a deed from Phelps for the 4000 acres, and delivered the deed ex-cuted by the plaintiff, which he had expressly stipulated to return to him, to Phelps, to whom he had previously sold the land described in it, at the rate of 3s. 4d. per acre. He gave Phelps a bond conditioned to save him harmless, in case the title to the Whole or any part of the land should fail, and the plaintiff be unable to respond for the damages; and from the evidence offered and overruled at the trial, which it is proper to consider as forming part of the plaintiff’s case, the defendant confessed that he had caused part of the land to be sold for taxes, and became the purchaser himself
From this state of things it appears to me totally irrelevant to the issue between the parties, to inquire whether the title to the land was valid, or otherwise : this wás to have been settled between the plaintiff and Phelps. It is sufficient to entitle the plaintiff to recover, to show that the contract entered into between him and the defendant was not complied with.
It appears to me to have been grossly violated, and that the subsequent transaction between the defendant and Phelps was mala fide.
*318 The defendant had agreed to return .the deed to the plaintiff: instead of this, he delivered it to Phelps. ■ • "
If was stipulated that the plaintiff should receive ■ three shillings per acre. Instead of this-‘the defendant makes a new sale to Phelps, at 3s. id. receives a title for 4000 acres to himself, and, for aught that appears, pockets not only the additional id. per acre, but the balance of the -consideration money, which was to be paid to the plaintiff. • [*267] *The transaction appears mysterious; but as far as the inducements of the parties can be traced, it' may in-some measure-be accounted for. Phelps, probably diffident of'the responsibility of the plaintiff, was induceii to give an additional sum for the "defendant’s indemnification and the acceptance of the deed for the 4000 acres, and the receipt of the 4cü. per acre, explains the. motive by which the defendant was actuated. •
If the defendant afterwards purchased the lairds- in question for the taxes, it must have been , in affirmance of the plaintiff’s title ; or if not so intended, his procuring them to be sold under that pretence, was. fraudulent, and ought not to avail him. Besides, if the defendant acquired a good title by the sale for taxes, it must, from the situation in which he had placed himself with Phelps, operate in affirmance of the title, of Phelps ; for the defendant had engaged to indemnify him, and it could answer none of his- purposes to assert his title in consequence of his purchases, if he was subject -to respond in damages on his contract. The. defendant appears in this court in an unfavorable view. He undertakes to investigate the title for a reward; he asserts contrary to his better judgment, if the evidence is to be relied on, in its extent, that the title is good for 19,000 acres ; avails himself of the knowledge he has acquired, át the expense of his confiding employers,- to take the money from the one," and the" land from the other, if it be true that his last purchase was ñót for the benefit of Phelps.
.It was insisted that the plaintiff, to sustain this " action, ought to show that his title to the lands was good; but it appears to me, that even- as between the parties in this suit; *319 supposing the defendant to be a principal, the manner in which the business was conducted would conclude the defendant.-
After detailing the particular mode in which the defendant was to conduct his researches, and to procure the certificates necessary to show that the title of the lands was in the jilaintiff, and that they were free from incumbrances, *the contract proceeds, and “ when such [*268] titles are fully and satisfactorily ascertainedthen the amount of the said lands, or so much of them as it shall appear the plaintiff has title to, shall be paid for. If after the word ascertained, the words in manner aforesaid had been added, it would have removed every doubt of the construction ; and yet the words are so placed in relation to those preceding, as strongly to convey the same sense, and to confine it to the manner of ascertaining it, before detailed, as if it were precisely limited by an express specification.
The title was to be fully and satisfactprily ascertained by the defendant, and when he was satisfied, he was to return the deed, with' the certificates, to the plaintiff, upon which the defendant was to receive the consideration money. A different construction, that the proof of title was to be satisfactorily made in a court of justice, would suppose the singular case, of a deliberate contract for a litigation.
It was, however, said, that even admitting the plaintiff’s general right to recover, the contract furnished no measure of damages. That the consideration money was to be paid in the discharge of debts due from the plaintiff can offer no insurmountable difficulty ; for as to him, they were worth their nominal value, as it extinguished so much of his debts. The loss the plaintiff has sustained is susceptible of being reduced to certainty by calculation, for it appears to me, his damages ought to be measured by the amount of the sum for which the plaintiff sold the land, with interest, deducting the 15131. 3s. 9d. already paid.
The objection that there is a variance between the contract set forth in the declaration, and the one produced in evidence, I think cannot be supported. The description in the decía *320 ration of the evidences of the debts to be received in payment for the land, are such as the contract w'arrants. The contract mentions that the land is to be paid for “ in Bran-[*■269] tingham’s notes, bonds, or other ^demands against him,” and then proceeds, “including the 1513 Z. 3s. 9d. which the said Brantingham has already, received, (fee. a judgment in favor of Comfort Sands,”’and then enumerates the other sécurities to be received"; then follows. the clause which is supposed to support the objection as to, the variance, “ and other demands which are now due, sufficient to pay the amount of the said, lands,” <fcc. The declaration states the sum of 15I3Z.- 3s. 9c?. as to be included in the payment; and adds, “ and that the said Joseph Fay would-pay a judgment obtained against the said Thomas H. Brantingham, at the suit of one ,Comfort Sands,” and describes the othersecurities correspondent with the description in the contract ¡ after which we find the words, “ and other demands against the said Thomas H. Brantingham, and then due from him; sufficient to pay the amount of the said land.” ■ ■ .
It is barely1 necessary to state" the connection • of the dif- ■ ferent expressions, to show that the supposed variation is merely in the terms, employed ; that the description of the contract in the declaration is substantially .and strictly, true, and that the construction" that a double payment was imposed on the defendant by the terms contained in-the declaration, is totally unfounded.
I am, therefore, of opinion, that the nonsuit ought to be set-aside. ..■•■'■
Lewis, J. declared himself to be of the same opinion.
Rule refused.(a)

 It is a general rule, that where the cause of action is trifling, and the plaintiff can recover no inore than nominal damages, a new trial will be refused. Ex parte Bailey, 2 Cowen, 479, 483, and references in note (a). Thus, in an action of assault and battery, where the injury was trifling, and the jury founds a verdict for the defendant, a new trial was refused,' notwithstanding the misdirection of the judge. Hyatt v. Wood, 3 Johns. R. 239; but see infra. And in an action of libel, where the jury find -a verdict for the defendant', the court will not grant a new trial, although the verdict be against the weight of evidence, where the proof is such as would have warranted a ver *321 diet for the plaintiff for nominal damages only. Rundell v. Butler, 10 Wend. 119. See Feeter v. Whipple, sheriff, &c. 8 Johns. R. 369. So, where in an action of .trespass, quar.e clausum fregit, the plaintiff recovered $5 damages ; the court, though the verdict was against law, refused to grant a new trial, as the title did not come in question, and the defendant would be entitled to full costs against the plaintiff. Hunt v. Burrel et al. 5 id. 137. And in an action of debt, where the jury found for the plaintiff, nominal damages only, the court refused to grant a new trial, merely to give the defendant an opportunity to get rid of the suit, as he would be entitled to costs as the verdict stood. Van Slyck v. Hogeboom, 6 id. 270. And where a jury gave a sum in damages too small to carry full costs, but expressed in their verdict that the plaintiff should have full costs, a motion for a new trial for the smallness of the damages, in order that at a future trial, sufficient damages might be obtained to carry costs, was refused. Lincoln v. Hapgood, 11 Mass. R. 350. In England, where the sum to be recovered is under 20Z., the action is considered as trifling, so as to deter the court from granting a new trial after verdict for the plaintiff; 4 Chit. Gen. Pr., 73 ; but, where the damages amount to the exact sum of 20Z., a new trial will be granted. Dyball v. Duffield, 1 Chit. 266, a. After a verdict for less than this amount, though such verdict be against evidence, the court will not grant a new trial, as it would only be granted on the payment of costs. As when a tender of 12Z. 10s. was pleaded and found for the defendant, with a verdict for 19Z. 10s. for the plaintiff on non assumpsit, pleaded to the rest of the demand, the court refused to hear a motion for a new trial as against evidence. Bryan v. Phillips, 3 Tyrwh. 181. S. C., 1 Cr. & M. Bevan v. Jones, 2 Y. & Jer. 264. So, where the verdict was clearly wrong; Armstrong v. Free, 2 Hodg. 197; but, if the jury find a perverse verdict contrary to the direction of the judge, a new trial will be granted. Freeman v. Price, 1 Y. & J. 402. Sed vide, Armstrong v. Free, ut supra. The general rule is equally applicable to cases where the Verdict is for the defendant, as where it is for the plaintiff. See Green v. Speakman, 8 Moore, 339. Scott v. Watkinson, 4 M. & P. 237. Young v. Harris, 2 C. & J. 14; S. C. 1 Price, P. C. 136; 2 Tyrwh. 167, Haine v. Davey, 6 Nev. & Man. 356; S.C. 2 Harr. & W. 30. Woods v. Pope, 1 Bing. N. C. 467; 4 Chit. Gen. Prac. 73. But it is not correct to say that a new trial will never be granted, where the jury find only nominal damages. Shenk v. Munday, 2 Dali. 118; S. C., 1 Yeates, 155. If the action involves the trial of a permanent right, the general rule does not apply as in trespass for cutting trees on a boundary fence, though the damages were under 20Z. Turner v. Lewis, I Chit. 265. And see Swinnerton v. Stafford, 3 Taunt. 91. But a misdirection of the judge or the receipt or rejection of improper evidence renders the case a proper one for a new trial, notwithstanding the smallness of the damages, for, in this case the application can be granted without costs. Bryan v. Phillips, ut supra. There is also a difference in the application of the ruler whether applied to a motion for a new trial or a writ of error. “ It is said by Ashhurst, J. in Edmonson v. Machell, (2 T. R. 4,) that * an application for a new trial, is an application to the discretion of the court, who exercise that discretion in such a manner as will best answer the ends of justice.’ But *322 where a record is brought into- this court for revision, and error is found in-it, is it a matter of discretion.in us, whether wé will correct that error or not? I have always supposed that the party who has been affected by an-error; be the extent of that injury ever so small, can require of us, ex deVito justitice to correct it.” Per Marcy, J. in Herrick v. Stover, 5 Wend. 581, 587. Iri Wilson v. Rastall, 4 T. R. 753, Lord Kenyon said, “ There is not a single instance where anew trial has been refused in a case where the verdict has proceeded on the mistake of the judge; Where,"indeed, the jury have formed an opinion upon the whole case, no new trial in a penal action has been granted,’ though the jury have drawn a wrong conclusion : So, too, in ordinary, where the damages áre small, and the question too inconsiderable to be re-tried# the court have frequently refused to send the case back to another jury. But wherever a mistake of the judge has crept in, and swayed the opinion of the jury, I do not recollect a single case in which the court have ever refused to grant a new trial.” The principle stated by Marcy, J., appears “ to be applicable, where the motion is founded on a bill of exceptions taken at the circuit; for, although ■ by the practice, it is brought to argument b.er fore this court, in the same manner as a case made, yet the judgment of this court upon.it may be reviewed on error, in which case , the appellate court would, of course, for the reasons above suggested,-disregard the nature or extent of the plaintiff’s demand. Where, however, it comes up on a case"# as no writ of error can be brought, and the application is addressed- entirely to the discretion of the court, they will, of course grant or refuse, a new trial, as the justice of the cáse may seem to require.” 2 Gra. Prac. 2d. ed» 634; Sée Graham on New Trials, 448, 461. .